E. L. BRUCE COMPANY v. LEAKE.

Opinion delivered March 19, 1928.

1. MASTER AND SERVANT—ASSUMED RISK.—A servant does not assume any risk or hazard caused by the negligence of the master, unless he knows that the risk exists, or unless the risk is an ordinary or usual one, of which the servant could have known by the exercise of ordinary care.

2. MASTER AND SERVANT—SAFE PLACE TO WORK.—A railroad company owed its brakeman the duty to use reasonable care to make inspection and ascertain that obstructions on or near the track were not so close as to be dangerous to the brakeman in the performance of his duties, and he had a right to assume that the railroad would perform its duties in this respect.

3. MASTER AND SERVANT—ASSUMED RISK.—A servant has a right to assume, not only that the master will perform his duty, but also that each of the other servants will perform their duty, and if, while in the exercise of ordinary care, he is injured either by the negligence of the master or by the negligence of a fellow servant, he has a right to recover.

4. MASTER AND SERVANT—CONTRACT EXEMPTION FROM NEGLIGENCE.— The master cannot make a valid contract exempting himself from his own negligence, and his servant does not assume the risk of the master's negligence, since the doctrine of assumed risks is based on contract.

5. MASTER AND SERVANT—ASSUMED RISK—JURY QUESTION.—In an action by a brakeman against the railroad company for injuries caused by the proximity of the track to a stump which caught the brakeman's foot as he stood on a stirrup after having coupled cars, the question whether he knew of the risks on account of obstructions near the track and therefore assumed the risk, held a question for the jury.

6. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—While a servant should exercise reasonable care in the performance of his work, the fact that he is engaged in the performance of such work and must give his attention to that should be taken into

consideration in determining whether he was guilty of contributory negligence.

7. Negligence—contributory negligence as defense.—In an action by a brakeman against the railroad for injuries caused by the master's negligence, contributory negligence did not bar plaintiff's recovery, though it could be shown in reduction of his damages.

8. Trial—jury questions.—Questions of fact about which fair-minded men might differ are properly submitted to the jury.

Appeal from Nevada Circuit Court; *J. H. McCollum,* Judge; affirmed.

*McRae & Tompkins,* for appellant.

*William F. Denman,* for appellee.

Mehaffy, J. The appellee brought suit in the Nevada Circuit Court against the appellant, alleging that he was employed by appellant as brakeman upon its log-train, which operated from the log camp in the woods to the town of Kilgore, a distance of about twelve miles. That on the 12th day of January, 1927, the train was returning from the log camp with a load of logs, when, on account of the rough and uneven condition of the track, the train, in rounding a curve, became uncoupled or broke in-two. That it was appellee's duty as brakeman to make the coupling, and he got down from the car, adjusted the drawheads of the couplers, and, after the train started, he stepped upon the step or stirrup on the car he had coupled. That the train was moving, and, as he stood on said step or stirrup, a large stump, standing within a very few inches of the track, caught appellee's foot between the stump and the step on which he was standing, breaking the bones in his foot and causing severe and permanent injuries. That the injury resulted from the negligence of the company in allowing and permitting said stump to stand within a few inches of the track, when it knew or should have known the same was dangerous to its employees. The suit was for $3,000.

Appellant filed answer, denying all the material allegations, and pleaded contributory negligence and an assumption of risk.

The appellee is 35 years old; was in the employ of the company as brakeman on a log-train and working under the orders of C. L. York, the engineer, who was his foreman. He was the only brakeman on the train, and his duties were to couple and uncouple cars, set out cars, and make up the train. At the time he was hurt they had made up the train, and were coming into Kilgore. They had several cars of logs and flatcars, and the train became uncoupled. Appellee got off to make the coupling, and it was on a curve, and he had to get out some distance, so the engineer could see him when he flagged him. He made the coupling, gave the signal, and, when the train started up, he got on. He caught the train with both hands and pulled himself up on the car, and had gone but a few yards when he hit the stump. His foot was in the stirrup, and when the stump was hit it broke his foot. He did not see the stump until it was hit. There was no switch-track there. He was confined to his room 91 days, and then had to walk on crutches for a time. He had been braking for the company about four years; was earning 35 cents an hour when he was hit, and is able now to earn but little. He had had experience as brakeman on other log roads.

The train would be taken out to the woods where the logs were by pushing the empty cars ahead of the engine, and, when the logs were loaded, the engine then pulled the cars into Kilgore. The track is not level, but there are hills and hollows and soft places, and these cause the couplers to miss or pass over each other.

Appellee got on the train after making the coupling as quickly as he could. He had made a statement about how the injury occurred, and admitted signing the statement which was made to the company. In that he stated that the stirrup cleared the stump about two inches. Appellee went over the road twice every day, and sometimes three times. They made all their trips in the daytime, unless they had trouble.

The physician testified that his foot was broken, and that the injury was permanent. Another physician tes-

tified that it was impossible to tell whether the foot was broken without an X-ray, and that he did not think the injury was permanent.

The road was just a log-road cut through the bottom, laid on top of the ground on poles and ties. It is not graded. The bottom there overflows, and the track crosses sloughs. There are obstructions along the side of the track too close to clear a brakeman on the side of a car. There are stumps and logs, and sometimes there are tree-tops. The day appellee was hit the train was on a curve, and there was a stump there that would not clear the brakeman. They had in the train that day six or eight cars. They often have trouble with the train becoming uncoupled or breaking in two. The right-of-way is narrow. The road is not fully spiked. The train would break in two all along the road, and it was appellee's business to couple it.

The company has a section foreman, and it is his duty to keep up the track. The stumps are out in the open, where everybody can see them. There is nothing to hide them. There had been a great deal of trouble with car stirrups being bent back or knocked off by stumps. The road was built to get logs into the mill. There is nothing about the brakeman's duty that requires him to ride on the side of the car while the train is in motion. After he makes a coupling he has to get on the train, but he does not have to ride on the side of the car. He would have to catch the side of the car or rear end. If a coupling is made on a curve, the brakeman would have to move back from the track until he got where he could be seen. When the signal was given the train would start, and the brakeman would have to catch the train while it was in motion. The engineer started the train as quickly as he could after getting the signal. There are sink-holes in the track, stumps, tree-tops and logs scattered all along the line. They just maintain the track so that they can get the log-cars over it. The track is moved as the timber is cut out. The company has a good deal of trouble caused by

obstructions along the track knocking stirrups off the cars. The right-of-way is very narrow, just wide enough for the train to get over. The road is not made for people to travel over. It is safe for a brakeman if he is on the cars. When the train breaks in two, the brakeman has to get on the ground to make the coupling. A man making a coupling would not have the opportunity to see all the obstructions. Practically all work connected with a logging railroad is dangerous.

The appellant's first contention is that the plaintiff assumed the risk, and that the court below should have given a peremptory instruction.

The appellee was the brakeman, and it was his duty to couple the cars and give the engineer the signal to move ahead. At the place where the injury occurred there was a curve that made it necessary for him to get some distance from the track to give the signal, and, when the signal was given, the engineer started the train. After the brakeman had given the signal, he then had to get on the train again after it was in motion. While in the performance of his duty coupling the cars, giving the signal and getting on the train of cars, it was not possible for him to notice obstructions near the track that one could notice who was not engaged in the performance of any duties. Duties must be performed, and there is no contention that he was not performing them in the proper manner.

He testifies that he caught the train with both hands, got his foot in the stirrup, and got on the train as quickly as he could. One riding on a train in the manner that the witnesses testified that the employees had to ride, in the middle of the car, would probably not be able to tell whether the stumps and other obstructions near the track were close enough to injure them or not. He knew there were stumps on the right-of-way, and knew that there were other obstructions. He knew that some of them were near the track, but there is no evidence that he knew that they were near enough to injure him. And, unless it could be said that, riding back and forth

on. the track, as appellee had for a long while, he could tell that the obstructions were close enough to be dangerous, then it cannot be said he knew the hazard, although he knew the obstructions were near the track.

Appellant, in support of his contention that the court below should have given a peremptory instruction because appellee had assumed the risk, cites *Asher* v. *Byrnes,* 101 Ark. 197, 141 S. W. 1176, and quotes as follows:

"When a servant enters into the employment of any one, he assumes the ordinary risks and hazards which are incident to the service, and this includes all those defects and dangers which are obvious and patent. He assumes all the risks which he knows to exist and all those which are open and obvious."

The above is a correct statement of the law, but it will be observed that it refers to the ordinary risks and hazards incident to the service. And it is true that he assumes the obvious risks, but, because an obstruction is near the track and the object itself or obstruction is obvious, does not necessarily mean that the risk or hazard is obvious. The servant does not assume any risk or hazard caused by the negligence of the master, unless he knows that the risk or hazard exists. If it were an ordinary or usual risk or hazard, then he would assume the risk, even if he did not know it, if he could, by the exercise of ordinary care, have known it. But, in order to assume the risk caused by the negligence of the master, he must know that the risk exists. He has a right to assume that the master will not be guilty of negligence, and he has the right to rely on that assumption, unless he knows that the contrary is true.

In the instant case it was the duty of the appellant to make inspection and to ascertain whether or not obstructions were so near the track as to be dangerous, but the employee was not under any duty or obligation to make inspection. He had a right to assume that the master had performed his duty, and did not have to make any investigation or inspection to find out whether or not the master had been guilty of negligence.

This court has many times held that, while an employee assumes all the risks and hazards usually incident to the employment he undertakes, he does not assume the risk of the negligence of the company for whom he was working, or any of its servants. He has a right to assume, not only that the master will perform its duty, but he has a right to assume that each of the other servants will perform their duty, and if, while in the exercise of ordinary care, he is injured either by the negligence of the master for whom he works or by the negligence of any other servant of the master, he has a right to recover.

The above is substantially the declaration of law by this court in *Aluminum Co. of America* v. *Ramsey,* 89 Ark. 522, 117 S. W. 568, and it has been approved many times since that decision.

It was the duty of the appellant in this case to use reasonable care to see that the obstructions on the track were not so close as to injure a servant in the performance of his duty. It was its duty to make inspection and use reasonable care to keep the road in this condition.

"That it was the duty of the railroad company to use reasonable care to see that the cars employed on its road were in good order and fit for the purposes for which they were intended, and that its employees had a right to rely upon this being the case, is too well settled to require anything but mere statement. * * * Sound reason and public policy concur in sustaining the principle that a railroad company is under a legal duty not to expose its employees to dangers arising from such defects in foreign cars as may be discovered by reasonable inspection before such cars are admitted into its train. This general duty of reasonable care as to the safety of its appliances resting on the railroad. the instructions in question proposed to limit by confining its performance solely to such foreign cars as are received by a railroad 'for the purpose of being hauled over its own road.' * * * The argument wants foundation in reason, and is unsupported by any authority.

In reason, because, as the duty of the company to use reasonable diligence to furnish safe appliances is ever present and applies to its entire business, it is beyond reason to attempt, by a purely arbitrary distinction, to take a particular part of the business of the company out of the operation of the general rule, and thereby to exempt it, as to the business so separated, from any obligation to observe reasonable precautions to furnish appliances which are in good condition." *Texas & P. R. Co.* v. *Archibald,* 170 U. S. 665, 18 S. Ct. 777, 42 L. ed. 1188.

It is the duty of the company to use this reasonable care with reference to every part of its business and with reference to seeing that obstructions on the track are not so close to the track that they will injure an employee in the performance of his duty. It will be remembered that the doctrine of assumed risk is based on contract, and the master cannot make a valid contract exempting itself from its own negligence. And this would be the result if an employee was held to assume the risk resulting from the negligence of the master, because assumed risk is based on contract. If the servant assumed the risk of the negligence of the master, this would be permitting the master to contract for exemption from its own negligence.

In a case of injury of a servant by a railroad company, the following instruction was given at the request of the plaintiff and excepted to by the defendant: "If the exigencies of the situation were such as to make it necessary for them to place the track so near the post as to be a source of danger, or to allow the post to remain so near the track as to be a source of danger, then it was their duty to notify their employees of that source of danger." The appellate court said: "This instruction was proper." *Savage* v. *Rock Island Co.,* 28 R. I. 391, 67 Atl. 633.

In that case a conductor riding on the running-board of an electric car was struck by a pole near the track. The court said:

"The danger from this pole, if any, was either an obvious risk, and so assumed by the deceased; or else it was non-obvious or extraordinary, and, if so, it was a matter as to which the deceased was entitled to special warning and instruction from the defendant. And, of course, it is well settled that in the latter case the burden of proof is upon the defendant to show that proper warning and instruction was given. * * * The railroad company and any other employer of labor and any other person cannot be allowed to contract himself out of his own negligence." Wilson v. New York, N. H. & H. R. Co., 29 R. I. 146, 69 Atl. 364.

It will of course not be contended that the company could contract itself out of its own negligence. That is, it could not contract so as to relieve it from liability for its negligence.

"An examination of the language and reasoning of the courts shows that the question whether a risk is or is not an ordinary one may be determined with reference to either one of two conceptions which are logically distinct. According to one of these, the differentiating test is furnished by the principle already adverted to in § 895, ante, viz., that every risk which is not caused by a negligent act or omission of the master's part is assumed by the servant." Labatt's Master & Servant, 2d ed. vol. 3, 3110.

Whether the appellee in this case knew of the risks and hazards was a question for the jury. Instruction No. 2, given at the request of the appellee, was a correct statement of the law. A servant does not assume the risk of the negligence of the company unless he knows of such negligence. And, for the same reason, instruction 10 was properly refused.

Appellant also complains at the refusal of the court to give its instruction No. 6. Number 6 was a peremptory instruction. When a servant is in the performance of his duty, as the brakeman was in this case, he does not have the opportunity to look out for obstructions of the kind mentioned here that he would have if he

was not so engaged. It is his duty to perform his work. Of course he should exercise reasonable care in the performance of it, but the fact that he is engaged in the performance of a duty and must give his attention to that should be taken into consideration in determining whether he was guilty of contributory negligence. Contributory negligence is not a bar, but may be shown in order to reduce the damages. And the jury was properly instructed by the court with reference to contributory negligence.

We think as to whether the servant would know that the obstructions were close enough to injure him was a question about which fair-minded men might differ, and therefore was properly submitted to the jury, and their verdict is conclusive on this court.

Finding no error, the judgment is affirmed.