BRUNER IVORY HANDLE COMPANY *v.* WEST.

4-3997

Opinion delivered October 21, 1935.

*McRae & Tompkins*, for appellant.

*W. S. Atkins* and *Ned Stewart*, for appellee.

BUTLER, J. Appellee brought this action to recover damages for injury sustained by him while in the employ of the appellant company. The negligence alleged was the failure to furnish a safe place for plaintiff to work, in that a warped board was placed in the platform on which he was engaged in work, and which, because of its warped condition, was raised above the level of the floor, causing him to stumble against it and fall, resulting in the injury for which damage is sought. The answer denied the material allegations of the complaint and, as affirmative defenses, pleaded assumed risk and contributory negligence. The trial resulted in a verdict and judgment in favor of plaintiff in the sum of $5,000, to reverse which this appeal is prosecuted.

The grounds of error argued by appellant are (1) that the undisputed evidence shows as a matter of law that the appellee assumed the risk, and that the trial court, in instructing on the question of assumed risk, erred in refusing to give instructions Nos. 3 and 6 requested by the appellant, but offered to amend these instructions by adding certain words thereto. The effect of these instructions as requested was to tell the jury that, although the defendant (appellant) negligently placed a warped board in the platform, yet, if the defective board was raised above the level of the floor to a degree to make it apparent and obvious to a person of

ordinary intelligence, plaintiff (appellee) assumed the risk arising therefrom, which would prevent his recovery. The amendment offered by the court in one instruction was to add, after the expression, "ordinary intelligence," the words, "engaged in the particular task in which the plaintiff was engaged at the time of the alleged injury." To the other instruction the amendment offered was to insert, as a qualification to the word "obvious" the words, "to the plaintiff, or if you further find that the said plank should have been plainly visible and obvious to the said plaintiff in the exercise of due care for his own safety." These instructions, as offered to be amended by the court, would have in effect declared the law to be that the appellee would be deemed to have assumed the risk occasioned by the negligent act of the appellant if the same was so obvious as to be at once apparent to a person of ordinary intelligence when engaged in the particular task appellee was performing at the time of his injury, or if said negligent act of appellant was visible and obvious to appellee or the defect plainly visible to appellee in the exercise of due care for his own safety. The question of the assumption of risk and the error as to the instructions of the court on that defense will be considered together.

The appellant operates a handle factory at Hope, Arkansas, where it manufactures handles of various descriptions. Appellee West was 39 years of age and had worked at the factory for 12 years. He was a grader's assistant or helper, and his duties were to assist the grader, and to carry or truck the handles to and from the dry kiln and warehouse. Little buggies or trucks were furnished for this purpose, and the employees could either truck the handles or carry them in their arms just as they saw fit. In going to and from the dry kiln, appellee would pass over a wooden platform about ten or twelve feet in width, and constructed of planks two inches thick and eight inches wide, laid crosswise on joists or stringers. On the day appellee was injured while performing his work he fell to the platform, sustaining a painful and permanent injury.

The evidence relating to the reason for appellee's fall, and the circumstances surrounding him at the time adduced in his behalf, and which was accepted by the jury as true, may be briefly stated as follows: On the morning of the injury, appellee was wheeling a buggy of handles when one of the wheels broke through a plank near the outer edge of the platform. The assistant superintendent was nearby and witnessed the accident. The handles had fallen from the truck and were lying on the platform. The assistant superintendent directed appellee to leave the handles alone saying that he would attend to getting them up. He also said he would have the platform repaired and called a negro for the purpose of putting in a new plank. Appellee then went back to the warehouse where he was engaged in some duties for a time, and while there heard sounds which indicated to him that a new plank was being inserted. While the new plank was being put in, appellee did certain work in the dry kiln, and then came around another way, picked up a bunch of handles placing them on his shoulder, and started from the warehouse to the dry kiln across the platform. He was carrying upon his shoulder forty-five handles which weighed something like two pounds each. In returning along the platform he took a course near its edge opposite to that where the hole had been previously made, being uncertain as to whether or not it had been repaired. He was glancing in that direction to see if this had been done, and, when he reached the point opposite to where the hole had been, and to the place where the new plank had been inserted, he struck his foot against it and fell heavily to the floor. He then observed that the new plank was warped, obtruding from 3 to 3½ inches above the level of the platform—that it had been nailed with a twenty penny nail which did not hold because the supports to which it was nailed were old and rotten.

A number of witnesses, employees of appellant company, testified that the platform was uncovered, and that a board sticking up from 3 to 3½ inches above the level of the floor would be plainly visible and discoverable at a glance. On the cross-examination of appellee, it de-

veloped that he had used the platform for a number of years while in appellant's employ, crossing it on an average of from 15 to 20 times a day in the performance of his work; that he did not see the elevated board before he stumped his toe against it, and that was the first time he had been across the platform since the new plank had been inserted. He was asked: "Did you look before you stumped your toe on it?" "Were you looking where you were going?" and "You did not look where you were going on account of the handles being in your way?" and was also questioned as to whether he looked before he crossed the plank. To these questions he answered in substance that he couldn't tell for sure where he was going on account of the handles he was carrying on his shoulder; that he had not ascertained how well the hole had been fixed and was "shunting" to the left until he could see how it looked; that he didn't look so close, but looked the best he could with the handles on his shoulder which obscured his vision, all the time trying to "shunt" the hole to the right not knowing how well it was fixed.

It is insisted from this evidence that the defective plank was so obvious and plainly discernible that knowledge thereof and the attendant danger must be imputed to the appellee as a matter of law creating an assumption of risk on his part and barring recovery. In support of this contention we are cited by appellant to many of our cases beginning with the case of *Davis* v. *Railway*, 53 Ark. 117, 13 S. W. 801, continuing down to decisions of a late date. To review these cases would unduly extend this opinion and could serve no useful purpose, as the principles relating to the doctrine of assumed risk stated in those cases are well settled in this State and by the great weight of authority in other jurisdictions. They deal with various phases of the doctrine; and on that relating to the assumption of risk by the servant for the negligent act of the master, and approve in varying language the rule stated in Bailey on Personal Injuries, 2d ed., § 408, cited by appellant: "Where it appears from the undisputed evidence that the defects or dangers are open and obvious and such as under the circumstances ought

to have been known and comprehended by the plaintiff, then he will be held to have assumed the risk as a matter of law." We find no conflict in the authorities as to this rule. The difficulty lies in its application, for it is apparent that the peculiar circumstances of each case must control, and that no one case is authority for its application in another. Under one set of circumstances an open and obvious defect ought to have been known and comprehended by the employee, while under different circumstances it would be a question whether or not such defects should have been known and appreciated by the employee injured by reason thereof. "While, however, open and obvious perils may not be made the foundation for a recovery for injuries sustained by reason thereof, it must appear in order to defeat the employee's action that the danger was in fact obvious to one in his situation." 18 R. C. L. 643, § 137.

"An employee of ordinary intelligence, experienced in the line of his duty, and not working under the immediate direction of a superior, assumes the risk of dangers incident to conditions produced through the negligence of his employer which are obvious and imminent and which he necessarily must have known and appreciated in the exercise of ordinary care for his own safety in the performance of his duties." *Francis* v. *Ark. Milling Co.*, 153 Ark. 236, 239 S. W. 1067.

In *St. Louis San Francisco Ry. Co.* v. *Blevins*, 160 Ark. 362, 262 S. W. 654, the court, in holding that assumption of risk of an obvious defect was a question under the circumstances of that case for the jury, adopted the language used by the Supreme Court of the United States relating to obvious defects and consequent dangers holding that the servant is not to be deemed to have assumed the risk unless these were "so obvious that an ordinarily careful person in his situation would have observed the one and appreciated the other."

Again, this court, in *Missouri Pac. Ry. Co.* v. *Harville*, 185 Ark. 47, 46 S. W. (2d) 17, said: "On the question of assumed risk, we cannot say as a matter of law that appellee assumed the risk. We think it was a question to be submitted to the jury, which the court did un-

der instructions that are not complained of. It is well settled that under the Federal Employers' Liability Act a servant is not deemed to have assumed the risk of the negligence of the master or that of a fellow-servant unless the consequent danger is so open and obvious that an ordinarily careful and prudent person in his situation would have observed the one and appreciated the other.''

It might be thought that the two cases last cited would be authority only in cases arising under the Federal Employers' Liability Act; but not so. That act did not change the common-law doctrine of assumption of risk, and cases arising under that act are controlled by the same rule as other cases wherein that doctrine is involved. Under the evidence in the case at bar, we cannot say that the minds of all reasonable men would agree that the appellee was negligent in failing to discover and guard against the danger of the defective plank, because, from the nature of his duties and the attendant circumstances which might have served to distract his attention to other objects, it cannot be said as a matter of law that the appellee is barred from recovery because of the assumption of risk. As is said in the case of *Choctaw, O. & G. R. Co.* v. *Jones,* 77 Ark. 367, 92 S. W. 244, "As plaintiff was busily engaged in work which required his attention, we think it was open for the jury to say that he did not know of or fully appreciate the danger, and that therefore he did not, by continuing at work, assume the risk of injury to which he was exposed by the carelessness of the foreman.'' See also *E. L. Bruce* v. *Leake,* 176 Ark. 705, 3 S. W. (2d) 988.

It will be seen from the authorities cited that the instructions requested by the appellant did not fully declare the law, and the amendments offered by the court were proper and necessary to submit the case to the jury under the rules announced *supra.*

It is also urged by the appellant that the trial court erred in admitting in evidence a conversation had between the appellee and the assistant superintendent relative to the latter's promise to have the hole repaired. This objection is based on the theory that the promise to repair was not alleged in the complaint. On the same

ground appellant objected to a part of one of the instructions given on behalf of appellee which referred to the alleged promise to repair the hole in the platform. This evidence was merely a part of the narrative leading to and explaining appellee's actions, and, while immaterial, was not prejudicial; so with the instruction. While the language of the instruction relating to the promise of the superintendent to repair was unnecessary, it could not have been prejudicial because it clearly appears from the instruction that the only issue of negligence presented was that of the insertion of the warped plank.

It is insisted in the last place that the verdict is excessive. The evidence is ample to sustain the amount of the award. It is to the effect that prior to the injury appellee was in good health with a life expectancy of more than 28 years earning $2.75 per day; that he suffered great pain as the result of his fall so that it was necessary for him to take sedatives in order to sleep; that he continues to suffer though many months have elapsed, and that he will probably suffer pain in the future; that he is a man who had earned his living as a common laborer; that the fall injured his knee so badly that it is necessary that he have a special brace; that the condition of his knee is, as described by one of the physicians, "wobbly and unstable—it would flop the knee back and forth, from side to side"; that this was caused by rupture of the ligaments of the knee, and the injury, in the opinion of this doctor, was permanent.

Objection was made to a question propounded to a witness by appellee's attorney during the trial relating to a proposed settlement between the appellant and appellee whereupon the attorney withdrew the question and apologized to the court. From the amount of damages awarded by the verdict, which to us appear moderate in view of the injury sustained, it is apparent that no prejudice resulted from the question. It also might be said that this matter was not presented to the trial court in the motion for a new trial.

We find no prejudicial error, and the judgment is therefore affirmed.