HUFFMAN WHOLESALE SUPPLY CO. *v.* TERRY

5-3787                                399 S. W. 2d 658

Opinion delivered March 7, 1966

*Gardner & Steinsiek,* for appellant.

*James E. Hyatt, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. This case concerns a materialman's lien. E. M. Terry, a building contractor of Blytheville, entered into a contract on March 6, 1964, with the trustees of the Rozelle estate for the construction of a home for Mrs. Mattie Rozelle in Osceola, Arkansas. Pursuant to the contract, Terry commenced construction and purchased certain materials from Huffman Wholesale Supply Company, appellant herein, and used these materials in building the home. Terry subsequently left the job, but it was completed by subcontractors. Whether or not the job was "completed" in July, or in September, is the controlling fact in the litigation. Terry, according to Huffman, made some payments on other jobs that he was working on during the same period, but made no payment on the Rozelle

job.[1] Work ended on the Rozelle construction about July 13, 1964, except for three instances, as follows: Air grills were purchased on August 20 to replace defective or improper air grills which had been originally installed; on September 17, and 23, a water faucet and installation accessories were purchased by the plumber and installed.

On December 3, appellant caused to be served upon Terry, and Bowen Thompson, Mattie P. Rozelle, and Roy E. Cox, the last three being executors and trustees of the Rozelle estate, notice of intention to file a lien; on December 22, 1964, appellant filed its affidavit for a lien, and on January 20, 1965, suit was instituted against the aforementioned persons, seeking recovery for materials allegedly furnished for the construction of the residence for Mrs. Rozelle, in the amount of $2,557.58. Appellant prayed that a lien be declared on the home property to secure the payment of this judgment. On February 5, 1965, appellees filed an answer, and cross-complained against Terry, alleging breaches of the contract on the part of that defendant.[2] In their answer, the trustees asserted that they had paid to Terry the sum of $27,450.00 (leaving a balance due of $1,603.69), through July 24, 1965; that Terry had agreed to pay all labor and material costs in connection with construction of the residence; they denied that appellant was entitled to a lien. The case proceeded to trial before a jury, and after appellant had completed its testimony by various witnesses, appellees moved for a directed verdict, and this motion was granted by the court. Judgment was entered for appellees, and appellant was given judgment against Terry in the amount of $2,557.58. Appellant appeals the judgment insofar as it directs a verdict in favor of appellees. Appellant correctly states the issue between the parties as follows:

[1]This testimony was rather indefinite, and Huffman was unable to enumerate the jobs where payments had been received.

[2]The transcript and briefs list Terry as an appellee in styling the case, but Terry did not file any pleading at all, and completely defaulted.

"Appellant contends that the material furnished from March through September was for material contemplated by the contract between the landowners and Mr. Terry. If the purchases made in September were for materials not anticipated in the original construction of the house or was for repair on the original construction of the house, then the purchase of such material would not extend the lien time. On the other hand, if the material purchased in September was merely the finishing up of the original contract, then the time for filing a lien would not begin to run until the date of the last purchase made."[2]

Of course, we are here dealing with a directed verdict, and this court has said on numerous occasions that, in determining the correctness of the trial court's action in directing a verdict for either party, we must take that view of the evidence which is most favorable to the party against whom the verdict is directed, and, *if there is any substantial evidence* tending to establish an issue in favor of the party against whom the verdict is directed, it is error for the court to take the case from the jury. See *Barrentine* v. *The Henry Wrape Company,* 120 Ark. 206, 179 S. W. 328, and cases cited therein. Also, in *Smith* v. *McEachin,* 186 Ark. 1132, 57 S. W. 2d 1043, we said:

"* * * In testing whether or not there is any substantial evidence in a given case, the evidence and all reasonable inferences deducible therefrom should be viewed in the light most favorable to the party against whom the verdict is directed, and, if there is any conflict in the evidence, or where the evidence is not in dispute but is in such a state that fair-minded men might draw different conclusions therefrom, it is error to direct a verdict."

Applying the rule set out in these cases, let us pro-

[2]The lien statute, and exceptions to its requirements, are discussed in *Streuli* v. *Wallen-Dickey and Rich Lumber Company,* 227 Ark. 885, 302 S. W. 2d 522.

ceed to examine the evidence in this case. The proof reflects that original plans for the house called for two water faucets to be placed on the outside of the structure. One of these was installed prior to July 13, but the other, which was to be placed on the front of the house, was not installed. According to appellant's evidence, the porch came out farther than had been anticipated under the plans, and the workers were directed not to install that faucet. Frank McGruder, plumbing contractor, who had charge of installing the plumbing, stated in his testimony:

"These tickets [referring to the two September tickets] both pertain to materials necessary to move a sealed faucet from a location on the porch around the corner of the house. As far as I know, the materials were drawn for that."

When Mr. McGruder was asked if there was actually any faucet already installed to be moved, the witness replied:

"Actually prior to that there was a faucet or preparations for a faucet had been made on the porch. We were instructed by Buddy or Dick Wright, which was his assistant, to cap the faucet, that faucet was not wanted at that location, and it was plugged and sealed over with brick mortar. At a later date we were told the faucet was necessary, and they just didn't want it on the porch and it was to be moved around the corner of the house."

Mr. McGruder identified an invoice of July 8, 1964, in the amount of $249.23 for pipe, elbows, faucets, and other plumbing materials, as being used on the job. He stated that it took him about two days to complete the plumbing work, and that he had completed the plumbing work certainly not later than July 13, 1964[4]. He further testified that while this work was going on (from July 8 to July 13), Mrs. Rozelle was not occupying the

[4]This did not include the second faucet.

house. On September 17 and September 23 the faucet and installation materials were purchased from appellant in the amounts of $.86 and $1.63, and admittedly, these were the only items purchased after the July completion of plumbing construction that could possibly relate back to the original contract, and extend the time for filing a lien. The faucet was installed on one side of the house.

Appellant, of course, is insisting that the installation on September 23 was a part of the original construction, while appellees contend that construction ended on July 13.

Appellees point out that from the time the construction commenced in March, until July 13, materials were furnished at short and regular intervals—but that the final small purchase (in September) was made more than sixty days after the last construction work. It is also pointed out that Mrs. Rozelle moved into the property after July 13—but before September, and was living there at the time that the second faucet was installed. On August 20, new air grills were purchased and installed to replace inappropriate or defective air grills.[5] Appellees take the view that the house construction was complete on July 13, and Mrs. Rozelle, living in the house, was replacing items that had proved deficient. Apparently, it is their view that it was only after she moved into the property that she decided there was a need for a second outside faucet, and that the purchase of this material was not related to the original contract in any manner. To the contrary, appellant contends that appellees never intended to do without the faucet—but only meant to move it from one location to another. Perhaps it is somewhat strange that more than sixty days would elapse before one small item (if still a part of the original contract), would be installed, but this is a matter to be argued to the jury. We think, under the testimony quoted, that it is purely a question of fact

[5]It is not contended that this purchase had anything to do with extending the time for filing lien, since this was a replacement or repair job.

whether the purchase of the second faucet and materials was made as a matter of carrying out the original plan, or whether the purchase and installation of the second faucet were entirely a separate and distinct transaction. In 36 Am. Jur., Section 141, Page 98, we find:

"If the furnishing of material or the performance of some service is expressly required by the terms of the contract, the time for claiming a lien will commence to run from the date of furnishing such article or performing such service, although the article is furnished or the labor performed some time after the substantial performance of the contract, and it is trivial in character. But to extend the time for filing, work performed or materials furnished must be required by the contract, and what is done must be done in good faith for the purpose of fully performing the obligation of the contract, and not for the mere purpose of extending the time for filing the lien.

"Where the items are furnished under one contract, unless the delay is unreasonable, the fact that a considerable time intervenes between the date of the last item and the preceding items is not of itself sufficient to preclude the lienor from computing the time to claim a lien from the date of the last item. This is especially so where the delay is at the instance and request of the owner, if the rights of third persons do not intervene. But one claiming a right of lien after having substantially completed his contract cannot unreasonably or purposely delay completing the same as to some trifling matter, and thereafter, by completing the contract in this respect, extend the time for claiming a lien to the latter date."

It is true that the September purchase was made after a delay of sixty days, whereas other purchases had been made at much shorter intervals—but we cannot say *as a matter of law* that a sixty-day delay in making purchases defeats any claim for lien. It is true

that the purchase of the faucet is rather trivial—but we cannot say *as a matter of law* that mere triviality defeats the lien. It is established that Mrs. Rozelle had moved into the property—but we cannot say *as a matter of law* that this fact precludes a lien.

We think it evident that the court should have denied the motion for directed verdict.

Reversed and remanded with directions to proceed in a manner not inconsistent with this opinion.