EDWARD PAGE v. BOYD-BILT, INC.

5-4790                                              438 S.W. 2d 307

Opinion Delivered March 17, 1969

*Leon Burrow* and *Oscar Fendler* for appellant.

*Everett E. Harber* for appellee.

CARLETON HARRIS, Chief Justice.    Edward Page, appellant herein, employee of Phillips Construction Company, was allegedly injured on March 26, 1966, when he stepped upon a roofing nail while working on a construction job.    The general contractor in charge of constructing a building for Ark-Mo Power Company in Blytheville, was Phillips Construction Company. Boyd-Bilt, Inc., appellee herein, had no connection with Phillips, but, according to a complaint filed by Page against this company, appellee had allegedly purchased a dwelling located on the work site, and had agreed to move the dwelling and clear the site in order for Phillips to proceed with construction of the office building. The complaint asserted that, in tearing down the garage next to the dwelling, agents, servants, and employees of appellee had been negligent in allowing nails and other dangerous objects to be spread and scattered about the premises upon which Page was working, in disregard for the safety of other persons rightfully working upon said premises; that appellee was further negligent in failing to clean up or "police" the area in which Phillips employees were working. Personal injuries were alleged as a direct result of appellee's negligence, and damages were sought in the amount of $50,000.00.    An

354

answer was filed by Boyd-Bilt, Inc., admitting that it was a corporation, but denying all other allegations as to negligence, injury, and damages. The answer was subsequently amended to assert that, if plaintiff received an injury, it was caused by someone other than appellee; that Page assumed the risk of his injury, knowing the situation, and realizing that he could be injured. On trial, at the conclusion of appellant's testimony, appellee moved for a directed verdict, which motion was granted. From the judgment accordingly entered, appellant brings this appeal. For reversal, it is simply asserted that the court erred in directing the verdict, since there was sufficient evidence offered by appellant to warrant submission of the case to the jury.

We first point out that, since we are dealing with a directed verdict, we must take that view of the evidence which is most favorable to the party against whom the verdict is directed, and, if there is any substantial evidence tending to establish an issue in his favor, it is error for the court to take the case from the jury. In testing where there is substantial evidence, the testimony and all reasonable inferences deducible therefrom must be viewed in the light most favorable to the party against whom the verdict is directed, and, if there is any conflict in the evidence, or where the evidence is not in dispute, but is in such state that fair-minded men might draw different conclusions therefrom, it is error to direct a verdict. *Huffman Wholesale Supply Company* v. *Terry*, 240 Ark. 399, 399 S.W. 2d 658.

Page, 49 years of age, testified that he was a carpenter, and, at the time of the accident, was employed by Phillips Construction Company on the Ark-Mo job in Blytheville. Just prior to sustaining the injury, Page, with another employee, Mode Sickles, had gone to the Park Street side of the construction site to pick up some steel reinforcing rods. This was not a normal job for Page and Sickles, but other laborers were busy endeavoring to complete the digging of the basement

before it rained. In returning, they used a different route, one they had not used before, because the shorter route was muddy. The job of carrying the rods required two men, with Page at the front and Sickles at the rear. They passed about 15 to 20 feet from where the garage had been torn down. The area being traversed was grassy. Page suddenly stopped, telling Sickles not to follow him, as he (Page) had stepped on a nail in a roofing shingle. Other shingles were scattered about the premises. Page said that he had not been looking at the ground, while carrying the steel, because he knew that the area had been previously cleaned up by the Phillips workers,[1] and he was not aware that the nails and shingles were on the ground. Page took off his boot and sock, and found one spot of blood. The nail, a four-penny shingle nail, was rusty at the end. He returned to work, but was unable to report to the job the next day, and was thereafter unable to resume his employment until June 8, 1966. Page testified relative to the seriousness of his injury, and treatment received therefor, but that question is not involved on this appeal. Appellant was wearing construction boots, the sole being $\frac{3}{8}$ to $\frac{1}{2}$ of an inch thick.

Sickles testified that he saw Page step on a shingle, pull his foot up, and that appellant then warned him, "Don't come this way." The witness said that he then looked over the area they were approaching, and saw shingles scattered all out in front of them. He said that Page stepped on the nail about 15 feet behind and to the rear of the location of the garage.

Tillman Dill, employed by Phillips Construction Company as superintendent, testified that Page was working for him on the Ark-Mo job. Dill said that he (Dill) had complained several times about the house and garage not being cleared from the property, and he

---

[1] Other houses had been torn down or moved at an earlier time, and some of the Phillips workers had cleaned up remaining debris.

did not remember exactly when the garage was torn down; he did know that it was still standing on February 15. The witness stated that the tearing down of the garage could have been a week or week and a half before Page was injured, and he testified that his men had cleaned up the entire area to the edge of the house and garage prior to the tearing down process. The foreman said that Page reported to him that he had stepped on a nail, and that appellant was wearing the type boots used in construction work at the time.

It is argued by appellee that there is no showing of negligence on the part of Boyd-Bilt—or that the shingles had been placed in that particular area by employees of Boyd-Bilt. It is mentioned that the spot where the alleged injury took place was about 20 feet from the garage, and it is also pointed out that there was no showing that the garage had been covered with wooden shingles.

We think appellee's argument lacks merit. Appellant had filed certain requests for admissions, No. 4 which was admitted, being as follows:

"The defendant, in tearing down this garage, removed the roofing from the top of said building."

The evidence, heretofore set out, reflects that all debris, occasioned by the moving of other buildings, had already been cleared away, which would mean that the shingles scattered over the ground near the garage were the same shingles that had composed the roof of the garage. This is certainly a logical inference; contrariwise, it would be most illogical to assume that some person carried the shingles to that location and strewed them over the ground. After all, 15 to 20 feet is not a great distance for shingles to fall when they are being removed from a roof and tossed to the ground. As far as the negligence of Boyd-Bilt is concerned, we think a jury question is made, rela-

tive to whether leaving exposed shingles with nails in them on premises where other people are working, constitutes negligence. Nor do we find merit in the argument relating to assumption of risk. Of course, this doctrine (which has been described as harsh) is generally applied in cases involving an employer-employee relationship, though there are some other situations that it can also apply to.[2] Certainly, under the facts presently before the court, Page could not, as a matter of law, be held to assume the risk of a danger, that, according to his testimony, he knew nothing about. An essential element of the doctrine of assumption of risk is that the person injured had knowledge of, and appreciated, the danger incident to his undertaking. In *E. L. Bruce Company* v. *Leake,* 176 Ark. 705, 3 S.W. 2d 988, this court said:

> "When a servant enters into the employment of anyone, he assumes the ordinary risks and hazards which are incident to the service and this includes all those defects and dangers which are obvious and patent. He assumes all the risks which he knows to exist and all those which are open and obvious."

In *Pona* v. *Boulevard Arena* (N.J.), 113 A. 2d 529, the court said:

> "It is well settled that a dismissal by the court on the ground of assumption of risk ... may only be entered in the clearest case where a contrary hy-

---

[2]For instance, in **Bugh v. Webb,** 231 Ark. 27, 328 S.W. 2d 379, Webb rode in an automobile driven by Bugh at a time when Bugh was engaged in an automobile race, commonly known as a "drag race." During the "contest," a pickup truck was struck by both Bugh's car and the car engaged in the race with him, Webb receiving injuries. A jury awarded damages, but we reversed, holding that Webb, in getting into the automobile, knowing full well of the hazards of drag racing at night on a heavily traveled highway, assumed the risk of proceeding in the face of danger, and was thus barred from recovery.

pothesis is not fairly admissible. * * * The elements 'must be of such a prominent and decisive character as to leave no room for a difference of opinion thereof by reasonable minds.' * * * The facts must appear clearly and convincingly, or as the necessary and exclusive inferences to be drawn by all reasonable men in the exercise of a fair and impartial judgment; otherwise the question is for the jury."

Prosser, Law of Torts, 3rd Ed. § 67, pp 453-54, citing the above case, states that assumption of risk is a jury question in all but the clearest cases. See also *Haynes Drilling Corporation* v. *Smith,* 200 Ark. 1098, 143 S.W. 2d 27, and cases cited therein.

We think it apparent that, under the state of this record it cannot be said that the facts show clearly and with no contrary hypothesis fairly admissible, that Page assumed the risk of stepping on shingles with nails when he helped carry the rods through the area.

Reversed and remanded.