Ronnie WHEELESS *v.* EUDORA BANK

74-11                    509 S.W. 2d 532

Opinion delivered May 28, 1974

*W. H. Drew*, for appellant.

*W. K. Grubbs Sr.,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant seeks reversal of a deficiency judgment entered against him on a directed verdict in an action by appellee to recover the balance due on a promissory note signed by him. In December of 1969, appellant's mother and father were experiencing marital troubles which eventually culminated in divorce. Appellant's father was the title holder of an automobile on which he was indebted to appellee. He transferred the title to appellant who executed a promissory note to appellee for $2,196.36, representing principal, discounted interest and credit life insurance premiums. The debt was secured by a security agreement covering the car. At this time appellant was 19 years old and on leave from military service. When he returned to duty, the vehicle remained in Eudora in the possession of his mother. Five payments were made on the note, the last one having been made in November of 1970. All five were made by appellant's mother. Since payments on the note had become delinquent, appellee, in January of 1971, requested appellant's mother deliver the car to appellee. She did not do so, but had the car parked in her yard where it remained until March or April of 1972.

Joe Arnold, vice-president of appellee bank, testified that when appellant returned from military service in August of 1971, he talked to appellant about the delinquent payments and appellant indicated he intended to pay for the car. However, no further payments were made and Eudora Motor Company, acting for appellee, picked up the car. Arnold said that prior to the repossession of the vehicle, appellant had come to the bank and signed the title over to appellee. Although Arnold testified that he had no conversation with appellant at that time, he said he got the impression that appellant acquiesced in the repossession and subsequent sale of the car. Arnold said that in the last conversation between him and appellant, he had told Wheeless that the bank needed to pick up the car and sell it so the deficiency would not be so high. On the other hand, appellant stated he signed the title over after the car had been picked up and sold. He testified no one discussed the sale with him at any time and said he had not consented to the procedure.

After repossession the car was repaired and exhibited for sale on the used car lot of Eudora Motor Company. A few weeks later it was sold for $550. Appellee then filed suit seeking a deficiency judgment of $1,292.88 with interest from February 22, 1971. Arnold testified that after the sale, he reported the sale to Wheeless and showed him the amount of the deficiency. He stated that Wheeless made no objection and promised to make payments. Arnold insisted that he told Wheeless in advance that the bank was going to repossess the car and sell it, but admitted that he mentioned no specific date. Arnold's excuse for not telling Wheeless when the automobile would be sold was that he had no idea when Eudora Motor Company would sell it. Wheeless surrendered the keys to the car to a representative of the Eudora Motor Company when it took possession. Following the conclusion of all the testimony presented at the trial, the court instructed a verdict against appellant for the deficiency.

Appellant contends the trial court erred in directing a verdict since appellee failed to pursue the default procedures regarding notice as to sale after repossession as required by the Uniform Commercial Code [Ark. Stat. Ann. § 85-9-504 (Supp. 1973)] and in ruling that appellant was estopped to assert this defense because he had prior knowledge of the sale. He also alleges that he was only an accommodation maker for his mother's benefit and that because of his minority he was entitled to rescind the agreement. We agree that the trial court erred in applying estoppel and in directing a verdict. The testimony presented a jury question as to whether appellant had prior knowledge of the sale and had waived his right to notice under § 85-9-504.

Prior to a sale of the collateral in its possession after default, a secured party is required to give notice to the debtor of the time and place of a public sale or the time after which a private sale is intended, unless the collateral is perishable, threatens to decline rapidly in market value or is of a type customarily sold on a recognized market. Ark. Stat. Ann. § 85-9-504 (3). A used automobile fits none of these exceptions to the notice rule as a matter of law. The question is one of fact. *Abbott Motors, Inc.* v. *Ralston,* 28 Mass. App. Dec. 35, 5 UCC Rep. Serv. 788 (1964). There is no evidence in the record that a used car declines rapidly in value. No recogniz-

ed market for used cars was shown to have existed. See *Norton* v. *National Bank of Commerce,* 240 Ark. 143, 398 S.W. 2d 538.

Appellee admits it did not comply with the notice requirement but asserts that appellant had prior knowledge of the sale which constituted a waiver of his right to notice and that, having such knowledge, he was estopped to claim lack of notice as a defense. The testimony of appellee's vice president, Arnold, was in direct conflict with that of appellant as to whether appellant was told of the sale, and signed over the title before or after the sale occurred. Appellee also contends this was a private sale and appellant's statement that he knew the car had been repossessed and his surrender of the keys to employees of Eudora Motor Company amounted to an admission he had notice that after that time the car was subject to private sale. The notice provision of Ark. Stat. Ann. § 85-9-504 requires more than this. Knowledge of repossession does not equate with notice of sale, nor does knowledge that an automobile will eventually be sold. The debtor is entitled to notification of a specific date after which the creditor intends to dispose of the property. This would provide the debtor a fixed period within which to protect himself from an inadequate sale price in any manner he saw fit. *Nelson* v. *Monarch Investment Plan of Henderson, Inc.,* 452 S.W. 2d 375, 7 UCC Rep. Serv. 394 (Ky. March 27, 1970). Therefore, the determination of whether appellant had prior knowledge of the sale and whether that knowledge would estop him from asserting lack of notice as a defense must be made on the basis of the conflicting testimony of appellant and Arnold.

We are committed to the doctrine that, since estoppel bars the truth to the contrary, the party asserting it must prove it strictly, there must be certainty to every intent, the facts constituting it must not be taken by argument or inference and nothing can be supplied by intendment. *Ford Motor Credit Co.* v. *Exchange Bank,* 251 Ark. 881, 476 S.W. 2d 208; *McFaddin* v. *Bell,* 168 Ark. 826, 272 S.W. 62. The evidence supporting the claim of estoppel in this case is certainly not free from argument. The trial court erred in ruling that appellant was estopped to assert lack of notice as a defense.

In determining whether a directed verdict was proper we must take that view of the evidence which is most favorable to

the party against whom the verdict was directed, and if there is any substantial evidence tending to establish an issue in his favor, it is error for the court to take the case from the jury. *Page* v. *Boyd-Bilt, Inc.,* 246 Ark. 352, 438 S.W. 2d 307. In testing whether there is substantial evidence, the testimony and all reasonable inferences deducible therefrom must be viewed in the light most favorable to the party against whom the verdict is directed, and, if fair-minded men might reach different conclusions, it is error to direct a verdict. *Page* v. *Boyd-Built, Inc.,* supra; *Huffman Wholesale Supply Co.* v. *Terry,* 240 Ark. 399, 399 S.W. 2d 658. When there is conflicting evidence and the evidence is subject to different inferences, as in this case, the motion for a directed verdict should be denied and the cause submitted to the jury. *Home Mutual Fire Ins. Co.* v. *Cartmell,* 245 Ark. 45, 430 S.W. 2d 849; *Huffman Wholesale Supply Co.* v. *Terry,* supra.

Appellant also contends that his minority at the time of entering into this transaction entitled him to rescind the agreement by signing the title over to the bank. Rescission by a minor 18 or over is governed by Ark. Stat. Ann. § 68-1601 (Repl. 1957) which allows rescission only when the minor makes full restitution to the other party. Full restitution means that the property must be returned in substantially the same condition as received; or if this cannot be done, there must be a return of the property plus a sum of money which equals the difference between the fair market values at the time of sale and at the time of rescission. Ark. Stat. Ann. § 68-1601. Appellant's entitlement to rescind was subject to the limitations of the statute. *Security Bank* v. *McEntire,* 227 Ark. 667, 300 S.W. 2d 588.

Appellant's contention that he has no liability to appellee because he signed the note as the maker only as an accommodation for the benefit of his mother is without merit. Even if the evidence were to show that appellant did sign to accommodate his mother, a point we do not decide, he would still be liable to appellee on the note. An accommodation party is one who signs an instrument in any capacity for the purpose of lending his name to another party to it. Ark. Stat. Ann. § 85-3-415 (1) (Add. 1961). When the instrument has been taken for value before it is due, the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation. Ark. Stat. Ann. § 85-

3-415 (2) (Add. 1961); *Rushton* v. *U.M. & M. Credit Corp.*, 245 Ark. 703, 434 S.W. 2d 81; *National Surety Corp.* v. *Crystal Springs Fishing Village*, 326 F. Supp. 1171 (W.D. Ark. 1971).

We cannot subscribe to appellee's argument that, at worst, the direction of a verdict was invited error. It appears to us that when the court overruled appellant's motion for a directed verdict at the conclusion of appellee's proof after argument of counsel for both sides, appellant's counsel stated his assumption that the court was holding that appellant was estopped as a matter of law. The circuit judge then stated "Alright, I am holding that way then." After further argument, the judge stated that all appellant's motions for a directed verdict were overruled. Appellant's attorney then said, as he saw it, appellee would then be entitled to a directed verdict. Appellee's counsel then said his client would not be, until appellant rested. The verdict was not then directed, but appellant thereafter testified in his own behalf and called his mother as a witness. Appellee also called Arnold as a witness in rebuttal. Then, after extensive arguments relating to motions for directed verdict by appellant and by appellee, as to certain defenses made by appellant, appellee moved for a directed verdict, on the whole case. This certainly was not by invitation of appellant.

For the reasons stated, the judgment is reversed and the cause remanded for a new trial.