487 A.2d 646

# FIRST NATIONAL BANK OF MARYLAND

v.

## Charles E. DiDOMENICO.

### No. 48, Sept. Term, 1984.

Court of Appeals of Maryland.

Feb. 6, 1985.

Deborah E. Jennings, Baltimore (Piper & Marbury, Baltimore, on the brief), for appellant.

Harold H. Burns, Jr., Baltimore (Stanton J. Levinson, Kallina, Levinson & Burns, Baltimore, on the brief, and Robert D. Sellers, Towson, on the brief), for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and EDWARD D. HIGINBOTHOM, Associate Judge of the Third Judicial Circuit of Maryland (retired), specially assigned.

HIGINBOTHOM, Judge.

The question presented here arises under the Secured Transactions Title of the Uniform Commercial Code. Md. Code (1975, 1984 Cum.Supp.), § 9–504(3) of the Commercial Law Article requires a repossessing creditor to give the debtor reasonable notification of the time after which a private sale of the collateral is to be made. In such a notice in this case the creditor added information about redemption which misstated the debtor's rights unfavorably to the debtor. We shall hold that the notice was not a reasonable one.

Charles E. DiDomenico borrowed funds from First National Bank of Maryland on March 28, 1980, for the purchase of a mobile home and granted to First National a security interest in that home. After the loan had been in default for some time, the bank, on February 19, 1981,

received from DiDomenico his written consent to repossession of the mobile home. That same day the bank mailed to him the notice which is at issue here and which included the following:

"You are entitled to redeem the said goods provided that within fifteen days from the date of delivery of this notice, you pay at the Bank the sum of $650.39 which is the aggregate amount in default under the Agreement, plus a delinquency charge of $0.00, or a total of $650.39 together with any other amount that may become due prior to redemption.

"If you do not redeem as aforesaid, the goods will thereafter be sold at private sale and if a deficiency arises, you will be liable for such deficiency."

On May 2, 1981, First National sold the mobile home at a private sale, resulting in a deficiency, and thereafter brought this action. DiDomenico counterclaimed for damages pursuant to § 9–507(1).[1] The circuit court entered judgment for the bank following a bench trial. In his oral opinion the trial judge found "as a matter of law that reasonable notice was given by the bank in compliance with" Title 9, and that DiDomenico "at no time in fact was ... able to make that redemption ...." The trial judge further relied on the lack of any evidence either that the bank refused DiDomenico the opportunity to redeem or that he had a buyer for the mobile home.

The Court of Special Appeals reversed and remanded for proceedings on the counterclaim. *DiDomenico v. First Nat'l Bank,* 57 Md.App. 62, 468 A.2d 1046 (1984). We granted First National's petition for certiorari which presented two issues:

"(a) Whether the Court of Special Appeals erred when it reversed a trial court's finding that a bank was entitled to the balance of its debt and was not liable to a default-

---

1. All statutory references are to the Commercial Law Article. Section 9–507(1) is reproduced *infra.*

ing debtor who had voluntarily returned his collateral and requested its sale by the bank, where the bank gave the debtor 15 days notice of the date after which a private sale would occur in accordance with *Commer. Law* § 9–504(3), and the debtor had contractually agreed that 5 days notice prior to sale would be sufficient;  and

"(b) Whether the Court of Special Appeals erred when it held ... that reasonable notice of the date after which a private sale will occur, pursuant to *Commer. Law* § 9–504(3), requires an explanation of the redemption provisions in *Commer. Law* § 9–506."

Before explaining why we are in substantial agreement with the analysis by the Court of Special Appeals, we emphasize, in relation to the two issues put forward by the bank, what this case does *not* involve.  First, we do not read the opinion of the intermediate appellate court as addressing the length of time that would be required for the notice to be reasonable under the circumstances of this case.  Secondly, we do not read that opinion as holding, and we do not hold, that a notice under § 9–504(3) must include an explanation of the redemption provisions of § 9–506, set forth *infra*, in order to be reasonable notice in compliance with § 9–504(3).

When the secured creditor in a Title 9 transaction has retaken the collateral after default and intends to dispose of it by private sale, § 9–504(3) governs with respect to notice from the creditor to the debtor.  In relevant part that section reads:

"Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor ...."

First National's notice told DiDomenico that the fifteenth day after its delivery to him was the time after which the

private sale would be held. The notice, however, communicated that time in the context of a description of redemption rights.[2] First National told DiDomenico that he was "entitled to redeem" the mobile home "provided that" he made certain payments "within fifteen days from the date of delivery" of the notice. The bank further told DiDomenico that "[i]f you do not redeem as aforesaid, the goods will thereafter be sold ...."

The statute governing DiDomenico's right to redeem the collateral was § 9–506 which provides:

"At any time before the secured party has disposed of collateral or entered into a contract for its disposition under § 9–504 or before the obligation has been discharged under § 9–505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses."

DiDomenico's redemption rights actually extended, so far as the record shows, to May 2, 1981, and were not limited to a period of fifteen days after delivery of the February 19 notice. First National's notice to DiDomenico undertook to present DiDomenico's redemption rights but did so in a manner which described them to be less favorable to the debtor than they were in law. We hold that a notice containing this misstatement is not "reasonable notification" under § 9–504(3).[3]

---

**2.** It seems most likely that First National's notice of February 19, 1981, was designed to comply with the Retail Installment Sales Act, Md.Code (1975, 1984 Cum.Supp.), § 12–601 to –636. There is no contention that the transaction in this case is governed by that act.

**3.** During an earlier default by DiDomenico First National had sent a notice dated October 31, 1980, threatening repossession and advising

■ In *Maryland Nat'l Bank v. Wathen,* 288 Md. 119, 414 A.2d 1261 (1980), this Court addressed the effect of noncompliance with the notice requirements of § 9–504(3) on a deficiency judgment. There the secured creditor had totally failed to give notice of a sale of the collateral to one of several debtors. *Wathen* held that a deficiency judgment was barred as to that debtor and described reasonable notice as a condition to a deficiency judgment. *Id.* at 126, 414 A.2d at 1265. Accordingly the Court of Special Appeals correctly reversed the deficiency judgment in favor of First National.

■ The bank argues that "reasonableness" of a notification is a question of fact which the trial judge resolved favorably to First National in this case. First National relies principally on *Richardson Ford Sales, Inc. v. Johnson,* 100 N.M. 779, 676 P.2d 1344 (Ct.App.1984). In that case the notice went on to state, accurately as of the date of the notice, the amount required to redeem the collateralized vehicle. It was only later, but prior to sale, that the redemption figure quoted in the notice was reduced by a credit resulting from a collision insurance payment. In the case before this Court what DiDomenico's redemption rights were is a question of law. Whether the writing involved here understates those rights is a question of interpretation of the instrument. And the legal effect of an understatement of rights on the "reasonableness" of the notification is a question of law.

First National correctly points out that its notice permitted DiDomenico to redeem during the fifteen-day period upon payment of the delinquent installments whereas § 9–506 requires payment of "all obligations secured by the collateral," expenses and attorney's fees, a figure which First National computes as approximating $10,000 in this case. As the bank sees it, DiDomenico enjoyed favorable

that redemption rights "will be terminated" fifteen days after delivery of notice of repossession. This earlier notice is not material to our decision.

terms of redemption, under the text of the notice, during the fifteen-day period and thereafter still had the right to redeem, but under the provisions of § 9–506. The difficulty with this analysis is that it ignores the misstatement in the notice limiting any redemption at all to the fifteen-day period.

The bank further contends, in effect, that DiDomenico has not been injured by any misstatement in the notice because the trier of fact affirmatively found that he was financially unable to redeem even at the $650.39 figure. The *Wathen* holding is that the giving of reasonable notification is a condition precedent to a deficiency judgment. *Wathen* assumed that the public auction of the collateral there involved had been commercially reasonable and its holding did not depend on causally connecting loss to the lack of notice. 288 Md. at 122, 414 A.2d at 1263. It is the breach of the condition and not actual damages resulting from the defective notice which prevents the deficiency judgment.

Nevertheless, the findings by the trial judge that DiDomenico could not himself redeem and that he did not have any prospective buyer are relevant to the counterclaim on remand. Section 9–507(1) provides:

"(1) If it is established that the secured party is not proceeding in accordance with the provisions of this subtitle disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this subtitle. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the debt or the time price differential plus ten percent of the cash price."

Here the debtor failed to prove "any loss caused by a failure to comply with the provisions of this subtitle." On the other hand, First National does not contend that this mobile home is not "consumer goods." Consequently the remand is limited to the consideration of the statutory damages under the last sentence of § 9–507(1).

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY FIRST NATIONAL BANK OF MARYLAND.