### Dale Carnegie ANDERSON, et al., Appellants,

v.

### PEOPLES SECURITY BANK OF MARYLAND, Appellee.

### No. 85–96.

District of Columbia Court of Appeals.

Submitted Nov. 4, 1985.

Decided Jan. 22, 1986.

---

Timothy Brown, was on the brief for appellants.

Joseph N. Bowman, was on the brief for appellee.

Before NEWMAN and BELSON, Associate Judges, and PAIR, Senior Judge.

PAIR, Senior Judge:

Following a bench trial in the Superior Court, Dale and Dolphine Anderson, appellants herein, were adjudged to be liable to appellee Peoples Security Bank of Maryland for the deficiency resulting from the bank's private sale of their automobile after repossession. The primary issue on this appeal is whether the bank complied with the notification of sale requirements set forth in Maryland's Commercial Code. We hold that it did so comply, and, because the Andersons' other related contentions are without merit, we affirm the judgment.

On April 10, 1979, the Andersons purchased a new automobile from Croyste Toyota, Inc. of Marlow Heights, Maryland. They made a down payment of $900, which included a trade-in allowance, and financed the unpaid balance of $6,775.50 through Peoples Security Bank. The Andersons consummated the purchase by executing a "conditional sales contract" with the dealer which was thereafter assigned to the bank.[1]

The contract provided for repayment of the principal debt and annual finance charges (15.99%) over four years in monthly installments of $191.77. The bank retained a security interest in the automobile, as well as the right to repossess it should the Andersons default in their payments. In this event, the bank had authority under the contract to resell the automobile and apply the proceeds to the existing obligation, and then recover any deficiency directly from the Andersons.[2]

Within several months of their purchase, the Andersons fell behind in their payments to the bank and consequently were in default. The bank thereupon repossessed the automobile on October 1, 1979,[3] and in a letter of that date notified the Andersons of the repossession and impending sale, saying in part:

We have repossessed the above described security, as a result of your breaching your contract. If you do not redeem it or request public resale, the security will be sold for the best price obtainable, and you will be advised as to your future liability under the contract.

If you have paid at least 50 percent of the cash price and so request in writing sent within such 15 days by registered mail, we will sell the security at public auction if your request is accompanied by a deposit of 10 percent of the above stated balance due, (maximum deposit $10.00). The proceeds of this sale, together with the deposit, will be applied first to the actual and reasonable selling costs; second, to the actual and reasonable cost of retaking and storage; third, to the unpaid balance owing on the con-

---

1. The contract appears to be on a standard form used by Peoples Security Bank in its transactions with automobile buyers. The contract, as drafted, indebted the Andersons to the seller, Croyste Toyota, Inc.; because of the financing arrangement, however, the Andersons actually became obligated to the bank. This was effectuated by a provision in the contract through which Croyste Toyota, Inc. assigned to the bank all of its "right, title and interest in and to the conditional sales contract."

2. The bank acquired these rights by assignment. *See* note 1, *supra.*

3. The repossession itself has never been challenged and is not at issue on this appeal.

tract. Any remaining surplus shall be paid to you and *you shall be liable for any deficiency.* [Emphasis in original.] [4] On November 7, 1979, the bank resold the automobile at a private sale. Because the proceeds from that sale were not sufficient to extinguish the debt, the bank commenced in the Superior Court the present action against the Andersons to recover the deficiency.[5]

The Andersons in April 1981 filed an answer to the complaint and a counterclaim. The counterclaim was predicated, *inter alia,* on the bank's failure to provide "reasonable notification of the time and place when the subject automobile was sold" in contravention of D.C.Code §§ 28:9–504, 9–506 (1981 & Supp.1985). The Andersons later amended their counterclaim to rely instead on the corresponding (and nearly identical) sections of the Maryland Commercial Code since "the entire transaction occurred in Maryland," thereby rendering the District's commercial law inapplicable. The bank in January 1982 answered the amended counterclaim, raising as its sixth defense a claim that the Andersons had "actual notice of the time, place and manner of the sale of the automobile."

The matter came to trial in November 1984.[6] Thereafter, judgment was entered in favor of the bank on both the original complaint and the Andersons' counterclaim.[7] Following the denial of their motion for a new tiral, the Andersons appealed to this court raising three related contentions: (1) that the bank's letter notifying them of the repossession and impending private sale of their automobile was inadequate as a matter of law under Md. Com.Law Code Ann. § 9–504(3) (1984 Supp.); (2) that the trial court committed reversible error in permitting the introduction into evidence of the notification letter since it was not authenticated by the bank's only witness; and (3) that the court erred in applying a "presumption of receipt" to the notification letter. The bank counters that it fully complied with the notification provision of Maryland's Retail Installment Sales Act, Md.Com.Law Code Ann. § 12–624(d) (1983 & Supp.1984), and that the notification letter was properly admitted into evidence and presumed to have been received by the Andersons.

We note at the outset that our decision here rests upon our construction of Maryland commercial law. The parties proposed to the trial court, and are in agreement before this court, that Maryland law is applicable. *See Young v. State Farm Mutual Automobile Insurance Co.,* 213 A.2d 890, 891 (D.C.1965). While this is not necessarily controlling, *Montgomery Federal Savings and Loan Association v. Baer,* 308 A.2d 768, 770 (D.C.1973), on this record it seems clear that the transaction was centered in Maryland, particularly with regard to the situs of the purchase and performance, *i.e.,* repayment, as well

---

**4.** The letter was introduced into evidence at trial and, from our examination, was designated as part of the record on this appeal. For some reason, the letter and other trial exhibits were not included in the original record which was transmitted to this court. When we discovered this omission, we requested the exhibits from the Superior Court Appeals Coordinator who, in turn, obtained exhibit copies from the Andersons' counsel. The copies were then transmitted to this court as a supplemental record.

**5.** The bank's complaint alleged a deficiency in excess of $2,200.

**6.** In the interim, the Andersons' retained trial counsel was permitted to withdraw due to their failure to assist in trial preparation. Apparent-

ly, the Andersons were content in representing themselves. Shortly before trial, they filed a "Motion for Leave to Supplement Amended Counterclaim" which raised allegations that the bank had violated the notice provisions of Md. Com.Law Code Ann. §§ 12–624, 12–625 (1983 & Supp.1984). The trial court properly denied this request as untimely. The Andersons proceeded *pro se* at trial.

**7.** The trial was not complicated. Mr. David Posey, an employee of Citizen's Bank of Maryland, which merged with Peoples Security Bank sometime after the repossession and resale of the Andersons' automobile, was appellee's only witness. He testified as a custodian of the records of the Anderson transaction. The Andersons testified at trial on their own behalf.

as the lender's and seller's places of business. *See Gagnon v. Wright,* 200 A.2d 196, 198 (D.C.1964) (citing *Kirschner v. Klavik,* 186 A.2d 227, 228–29 (D.C.1962)). Moreover, it appears that the bank filed suit in the Superior Court only because service of process on the Andersons could not be effectuated in Maryland. Thus, for these reasons, we hold that Maryland law is controlling.

We hold also that Maryland law was correctly applied in this case, although resolution of the dispositive issue, *viz.,* whether the bank was required to comply with the notice provisions of § 9–504(3) or § 12–624(d) of the commercial code, is made difficult by the absence of decisional law precisely on point. Section 9–504 governs aspects of the disposition of collateral upon default. Subparagraph (3) provides in part as follows:

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market reasonable notification of the time and place of any public sale or *reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured*

*party to the debtor....* (Emphasis supplied.)[8]

If the secured party does not comply with this section, and nevertheless disposes of the collateral, the debtor may recover from the secured party "any loss caused by [such] a failure to comply...." *Id.* § 9–507(1) (1975). And where, as here, the collateral is a consumer good,[9] "the debtor has a right to recover in any event an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price." *Id.* § 9–507(1).[10]

If the case at bar were controlled by § 9–504(3), as the Andersons would have it, we would have serious doubt that the bank's notification was adequate as a matter of law.[11] The bank resold the collateral at a private sale. Since an automobile is not perishable, subject to a speedy decline in value, nor of a type customarily sold on a recognized market, *Maryland National Bank v. Wathen,* 288 Md. 119, 121, 414 A.2d 1261, 1263 (1980) (interpreting exceptions set forth in § 9–504(3)), this case would turn on whether the bank's letter to the Andersons provided "reasonable notification of the time after which ..." the private sale was to be made.

Upon examination, it appears that the bank's letter did not comport with § 9–504(3), as it states in pertinent part only that "[i]f you [the Andersons] do not redeem it [the automobile] or request public resale, the security will be sold for the best price obtainable, and you will be advised as

**8.** This section mirrors D.C.Code § 28:9–504(3) (1985 Supp.).

**9.** An automobile, whether new or used, is considered a "consumer good" if it is "used or bought for use primarily for personal, family or household purposes." Md.Com.Law Code Ann. § 9–109(1) (1975); *Maryland Independent Automobile Dealers Association, Inc. v. Administrator, Motor Vehicles Administration,* 41 Md.App. 7, 8, 394 A.2d 820, 821 (1978) (citation omitted). There has been no suggestion that the Andersons purchased their automobile for any other purpose.

**10.** Of course, the debtor is without a remedy against one who purchases the automobile from the secured party at a private sale in good faith and for value. Md.Com.Law Code Ann. § 9–504(4)(b) (1984 Supp.).

**11.** We note, parenthetically, that there is no dispute as to the contents of the notification letter. Therefore, whether such notice complied with statutory requirements is purely a question of law. *See First National Bank of Maryland v. DiDomenico,* 302 Md. 290, 296, 487 A.2d 646, 649 (1985).

to your future liability." The Andersons were not informed "of the time after which" the private sale was to be made, an explicit requirement of § 9–504(3). *See, e.g., Citizens State Bank v. Sparks,* 202 Neb. 661, 664, 276 N.W.2d 661, 663 (1979); *Commercial Credit Corp. v. Wollgast,* 11 Wash.App. 117, 122, 521 P.2d 1191, 1195 (1974); *Wheeless v. Eudora Bank,* 256 Ark. 644, 647, 509 S.W.2d 532, 534 (1974); *Nelson v. Monarch Investments Plan of Henderson, Inc.,* 452 S.W.2d 375, 377 (Ky. 1970); *see also* J. White & R. Summers, UNIFORM COMMERCIAL CODE, § 26–10, p. 1113 (2d ed. 1980); Smith & Faint, *The 1981 Revisions to the Maryland Law of Secured Transactions: An Overview for the Practitioner,* 40 MD.L.REV. 544 (1981). And, therefore, they were without guidance as to the period of time within which they could have protected themselves against an inadequate private sale price in whatever manner they saw fit. *See Wheeless v. Eudora Bank, supra,* 256 Ark. at 647–48, 509 S.W.2d at 534–35; *Nelson v. Monarch Investments Plan of Henderson, Inc., supra,* 452 S.W.2d at 377; *White & Summers, supra,* § 26–9, p. 1109.

The bank argues, however, and we think convincingly so, that the adequacy of its notice should be tested only against that required by Maryland's Retail Installment Sales Act (hereinafter "RISA"), Md. Com.Law Code Ann. § 12–601 *et seq.* (1983 & Supp.1984). RISA was enacted in 1941 to protect installment buyers. *United States v. Bland,* 159 F.Supp. 395, 396 (D.Md.), *aff'd,* 261 F.2d 109 (4th Cir.1958). "It reflects the view that improvident and careless consumers who buy on the installment plan need legal protection, since buyers ordinarily do not read their contracts and associated papers carefully." *Id.* (citing *Stride v. Martin,* 184 Md. 446, 451, 41 A.2d 489, 491 (1945)). RISA governs contracts for the retail sale of goods negotiated or entered into in Maryland, under which "(i) [p]art or all of the price is pay-

able in one or more payments after the making of the contract; and (ii) [t]he seller takes collateral security or keeps a security interest in the goods sold." Md.Com.Law Code Ann. § 12–601(*l*)(1) (1983). As presently codified, RISA defines "goods" as "all tangible personal property that has a cash price of $25,000 or less." *Id.* § 12–601(j)(1) (1984 Supp.).[12]

Section 12–624(d) of RISA, on which the bank relies in the instant case, grants notice protection to buyers whose goods have been repossessed. It provides:

*Required notice after repossession.* —Within five days after he repossesses the goods, the holder [defined in § 12–601(k) (1983) as "a person, including a seller and a sale finance company, entitled to enforce an [installment sale] agreement against a buyer"] shall deliver to the buyer personally or send to him at his last known address by registered or certified mail, a written notice which briefly states: (1) The right of the buyer to redeem the goods, and the amount payable for them; (2) The rights of the buyer as to a resale, and his liability for a deficiency; and (3) The exact location where the goods are stored and the address where any payment is to be made or notice delivered.

Once notice is given to the buyer pursuant to this section, the "holder" must retain the collateral for a period of 15 days, *id.* § 12–625(a) (1984 Supp.), during which time the buyer may effectuate redemption. *Id.* § 12–625(b). If the buyer does not redeem the goods, the holder may thereafter resell the collateral at a private sale, unless the buyer has paid at least 50 percent of the cash price of the goods and within the 15-day period "requests sale of the goods in writing sent to the holder by registered or certified mail." *Id.* § 12–626(a) (1983). In that event, the holder is required to conduct the sale by public auction. *Id.*

---

**12.** At the time of the transaction at issue, RISA was limited to tangible personal property with a value of less than $12,500.

However, in either event the buyer is liable for the deficiency provided the installment agreement calls for such liability and the notice requirements of § 12–624(d) have been satisfied. *See id.* § 12–626(e)(4) (1984 Supp.).

■ The bank's letter to the Andersons fulfills the requirements of § 12–624(d). In addition to the information contained in the excerpt, *supra*, pertaining to the rights of the Andersons as to redemption and resale, the letter provided notice of the balance due on the debt, the location where the automobile was stored, and the address where payments were to be made and notices delivered. Moreover, and not coincidentally it would seem, the letter appears to track the pertinent language of §§ 12–625 and 12–626. Therefore, although the notice was inadequate under § 9–504(3), it surely satisfied the comparable provision of RISA.

The Andersons contend, however, for obvious reasons, that § 9–504(3) should be deemed controlling. They rely principally on the decision of Maryland's intermediate appellate court in *DiDomenico v. First National Bank of Maryland,* 57 Md.App. 62, 468 A.2d 1046 (1984), *aff'd,* 302 Md. 290, 487 A.2d 646 (1985). In *DiDomenico,* the debtor obtained a loan from a Maryland bank and used the funds to purchase a mobile home. The bank was granted a purchase money security interest in the mobile home, and by the terms of the security instrument was authorized to repossess it upon default. Within a year of the purchase, DiDomenico defaulted on the debt and the bank, with his consent, repossessed the collateral. Shortly thereafter, DiDomenico received a notice of repossession from the bank which informed him that he could redeem the mobile home within fifteen days after receipt of the notice. DiDomenico did not do so, and approximately two months later the bank sold the property.

The bank later brought suit against Di-Domenico for the deficiency and DiDomenico counterclaimed for statutory damages under Maryland Commercial Code § 9–507(1), *supra.* The trial court entered judgment in the bank's favor, and DiDomenico then appealed, raising as one ground for reversal the bank's failure to comply with the "reasonable notification" requirement of § 9–504(3). The Maryland Court of Special Appeals agreed, holding that the repossession notice misled DiDomenico into believing that he could redeem the collateral only within the fifteen-day period, when in fact he had until the date the mobile home was sold to exercise his right of redemption. *Id.* at 66, 468 A.2d at 1048 (applying §§ 9–504(3) and 9–506 (1975)).

In reaching this decision, the court rejected the bank's assertion that its repossession notice was adequate because it satisfied the RISA requirements contained in §§ 12–624 and 12–625. *Id.* at 66, 468 A.2d at 1048. The court found dispositive the fact that the *bank* had retained a security interest in the goods sold, rather than the *seller* (*i.e.,* the mobile home dealer) as is required by § 12–601(*l*)(1)(ii) for the retail sales contract to be deemed an installment sale agreement. *Id.* Since, therefore, the contract at issue was not an installment sale agreement, the court held that RISA was not applicable. *Id.* The Court of Appeals of Maryland affirmed the judgment in *First National Bank of Maryland v. DiDomenico,* 302 Md. 290, 487 A.2d 646 (1985); however, in that appeal there had been no contention by the bank that RISA was controlling. *Id.* at 295, 487 A.2d at 648 n. 2.

In our view, the Andersons' reliance on the Court of Special Appeals' decision in *DiDomenico* is misplaced. Shortly before the Maryland Court of Appeals affirmed the intermediate appellate court's *DiDomenico* decision, it decided *Ford Motor Credit Company v. Edwards,* 302 Md. 102, 485 A.2d 1010 (1985). In *Edwards,* the debtor entered into a "Maryland Automobile Retail Installment Contract" with a dealer (the seller) for the purchase of an automobile. The contract was assigned by

the seller to Ford Motor Credit Company, who financed Edwards' purchase. Edwards subsequently defaulted in his payments and surrendered the automobile to the finance company, who then sent to Edwards a "Notice of Repossession and Right to Redeem or Re-instate." Because Edwards did neither, Ford Motor Credit Company sold the automobile at a public auction, and then sued for the deficiency. A judgment was entered in favor of Edwards, however, which was thereafter affirmed on appeal. The Court of Appeals granted certiorari to decide "whether the notice to be given to the debtor where repossessed property is to be sold is that provided for by the Retail Installment Sales Act (RISA) or that found in the Uniform Commercial Code (UCC), where the repossessed property constitutes goods as defined in the RISA." *Id.* at 104, 485 A.2d at 1011 (footnote omitted).

In reversing the judgment, the Maryland high court ruled that Ford Motor Credit Company had complied with the notice provisions of RISA, and that this had satisfied its notice obligations. *Id.* at 106, 485 A.2d at 1013. "The transaction was subject to the provisions of the RISA," the court held, "because the security interest was retained by the seller, who then assigned to a third party." *Id.* at 106, 485 A.2d at 1012. It was therefore inconsequential that the finance company did not provide notice of the time, place, and date of the public sale, each requirements of § 9–504(3). *Id.* And this was so even though the security agreement, by its terms, created "a security interest under the Uniform Commercial Code." *Id.* at 108, 485 A.2d at 1013.[13] Moreover, it was noted that "[t]he provisions of § 9–203(4) [Md.Com.Law Code Ann. § 9–203(4) (1984 Supp.)] of the UCC

specifically provide that in the event of a conflict between the UCC and certain other statutes, including the RISA, the provisions of such [other] statute control." *Id.* at 107, 485 A.2d at 1012 (footnote omitted).

While, at first glance, the approaches of the Maryland Court of Appeals in *DiDomenico* and *Edwards* appear contradictory, the cases are distinguishable in one important respect: unlike in *Edwards*, in *DiDomenico* the seller was never granted a security interest in the goods sold. To be sure, the lender in each case acquired a purchase money security interest in the collateral. *See* Md.Com.Law Code Ann. § 9–107(b) (1975). But in *Edwards*, the lender acquired such an interest through the seller, *i.e.*, by assignment. In contrast, in *DiDomenico* the lender dealt solely with the buyer, who in turn transacted with the seller. To put it another way, there existed in *Edwards*, in effect, one tripartite transaction, whereas in *DiDomenico* there existed distinct bipartite transactions.

For this reason, *DiDomenico* is inapposite to the case *sub judice*. The Andersons entered into a conditional sales contract with the seller, Croyste Toyota, Inc., which obligated them to make monthly installment payments of the deferred price over a four-year period. The seller retained a security interest in the goods sold, which it then assigned to Peoples Security Bank as a part of the financing arrangement. Thus, this was not a case in which the buyer borrowed funds from a bank and then, in a separate transaction, used the funds to purchase goods from a seller. Instead, it appears that the parties consummated a typical retail installment sales transaction. *See* 1B U.C.C. Rep.Serv. (MB) § 20.01[4] (1985).[14]

---

**13.** The Court of Appeals ruled that the reference to the Uniform Commercial Code in the security agreement "was descriptive only, and [did] not incorporate the UCC notice requirements into the RISA." *Id.* at 108, 485 A.2d at 1013.

**14.** The Andersons' reliance on the Court of Special Appeals' decision in *DiDomenico* is uncertain for another reason. In *DiDomenico*, the

court held that the bank could not rely on RISA because it, not the *seller*, had retained the security interest in the collateral. 57 Md.App. at 66, 468 A.2d at 1048 (applying § 12–601(*l*)(1)(ii)). The Court of Appeals of Maryland has stated, however, that the inclusions of § 12–601(*l*)(2), *e.g.*, a purchase money security agreement, operate "to enlarge the basic definition in ... § 12–601(*l*)(1) and [are] not set forth merely

*Edwards*, on the other hand, more closely resembles the situation here, as it involved financing through a lender on the security of the sales contract, the rights to which were acquired from the seller by assignment in the same transaction. *See* 1B U.C.C.Rep.Serv. (MB), *supra*, at § 20.-01[4]. Simply put, the court determined that "[t]he transaction was subject to the provisions of the RISA, because the security interest was retained by the seller, who then assigned to a third party." *Edwards*, *supra*, 302 Md. at 106, 485 A.2d at 1012. This holds true for the Anderson transaction as well.

While *Edwards* is distinguishable in some respects, its distinguishing features are not determinative. The most notable distinction which can be drawn is that in *Edwards* the lender was an automobile sales finance company (Ford Motor Credit Company), whereas in the instant case the lender was a bank. While this may seem trivial, the pertinent provisions of RISA, including § 12–624(d), contemplate action by a "holder," defined in § 12–601(k) as "a person, including a seller and a sales finance company, entitled to enforce an [installment sale] agreement against a buyer." Therefore, it might be argued that the *bank* could not avail itself of the holder-oriented sections of RISA.

■ The better view in our judgment, is that the bank *in this case* is a "holder" within the context of RISA. The terms "seller" and "sales finance company" in § 12–601(k) must be read to be illustrative, and not exclusive of the defined term. And clearly, the bank was entitled to enforce the agreement against the Andersons because of the seller's assignment. But in any event, it is likely that Peoples Security Bank met § 12–601(q)'s definition of "sales finance company," as "a person who is engaged, whether by purchase discount, pledge, loan, or otherwise, in the business of acquiring, investing in, or lending money

or credit on the security of any interest in: (1) An installment sale agreement made between other parties...."

■ To conclude, we hold that under Maryland law Peoples Security Bank was required to comply with the notice provisions contained in § 12–624(d) of RISA. Having done so, its failure to provide notification of the "time after which" the private sale was to be made, required by § 9–504(3) of the commercial code, was inconsequential. The Andersons' argument to the contrary, though well presented, is unpersuasive.

The Andersons' remaining contentions may be dismissed with considerably less discussion. They contend that the trial court erred, as a matter of law, "in admitting appellee's notification letter despite the lack of authentication," and in any event, erred "in applying to the facts of this case the time-honored presumption that a letter properly addressed and mailed is presumed to [have been] received by the addressee." Both contentions are without merit.

■ Appellee introduced at trial, without defense objection, a copy of its notification letter of the impending repossession sale. Appellee's only witness, Mr. Posey, testified as a custodian of the bank's records that they reflected that the notification letter had been prepared, then addressed and mailed to appellant Dale Anderson. "While it is true that documentary evidence must be authenticated before it will be admitted, such authentication need not be by direct proof—circumstantial evidence will suffice under proper conditions." *Namerdy v. Generalcar*, 217 A.2d 109, 111 (D.C.1966). We hold that there was sufficient evidence that the letter was genuine, particularly because Mr. Posey testified

---

for purposes of illustration." *State v. Action TV Rentals, Inc.*, 297 Md. 531, 545, 467 A.2d 1000, 1007 (1983). The bank in the instant case acquired a purchase money security interest in the collateral by virtue of § 9–107(b).

from the bank's records of the Anderson transaction.[15]

We also reject the Andersons' contention that the trial court committed reversible error by applying the "presumption of receipt" to the repossession letter. Section 12–624(d) of RISA, *supra*, required the bank to personally deliver the notice "or send [it] to ... [the Andersons] at ... [their] last known address by registered or certified mail." There is no requirement of actual receipt under the above-quoted provision. *Cf. Crest Investment Trust, Inc. v. Alatzas*, 264 Md. 571, 576, 287 A.2d 261, 264 (1972) (citations omitted) (construing § 9–504(3), *supra*). The trial court, consequently, need not have applied the presumption of receipt. And there is sufficient evidence of record that the bank sent the notice by certified mail to the Andersons' last known address.

For the reasons set forth above, the judgment of the trial court is

*Affirmed.*

---

**15.** The bank maintains that the letter was admissible because it qualified as a business record and therefore was not subject to the general rule of hearsay exclusion. *See* Super.Ct. Civ.R. 43–I(a). Thus, it submits that Mr. Posey was not required to have first-hand knowledge of the letter. *See id.* However, we do not view the notification letter as hearsay. It was not offered into evidence as proof of the matter asserted, *e.g.*, the Andersons' right to redeem the collateral; rather, it was offered to show that the requisite notice had been provided.